UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SELVIN SAIAS SITUJ GARCIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00025-JAW |
| | ) | |
| DERRICK STAMPER, *in his* | ) | |
| *official capacity Chief Patrol Agent,* | ) | |
| *U.S. Border Patrol*, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen violates due process, the court grants the noncitizen's petition for writ of habeas corpus and orders the government first to return the noncitizen to the District of Maine and then provide the noncitizen a bond hearing in accordance with the terms of this order.

**I.    BACKGROUND[1]**

Selvin Isaias Situj Garcia, a resident of Middlesex County, Massachusetts, is a Guatemalan citizen who arrived in the United States in September 2021.  *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* ¶¶ 1-2 (ECF No. 1) (*Pet.*).  On January 15, 2026, U.S. Immigration and Customs Enforcement (ICE) arrested and detained Mr. Garcia while he was working at a construction site in Bethel, Maine. *Id.* ¶ 3.  On January 18, 2026, alleging his immigration detention violates federal law

---

[1]    For the purposes of Mr. Garcia's petition for writ of habeas corpus, upon agreement of the parties, the Court reviews the relevant facts as pleaded in his verified petition and accompanying attachments.

and the United States Constitution, Mr. Garcia filed a verified petition for writ of habeas corpus and an emergency motion for a temporary restraining order blocking his removal from the District of Maine. *Pet.* at 1-11; *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 3). That same day, the Court issued a forty-eight-hour emergency order, enjoining Respondents from transferring Mr. Garcia outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 4).

At the teleconference of counsel on January 20, 2026, Respondents explained that after Mr. Garcia filed his habeas petition but before the Court issued its emergency order, Respondents moved Mr. Garcia to Jackson Parish Correctional Center in Jonesboro, Louisiana.[2] *Min. Entry* (ECF No. 6). Given this development, the parties agreed to amend Mr. Garcia's motion for TRO to block his removal from the country and ensure his reasonable access to counsel. *Id.* The parties also agreed there were no factual disputes for the Court to resolve in this matter and stipulated to the facts in Mr. Garcia's verified petition and its exhibits. *Id.*

---

[2]     Mr. Garcia filed his petition for writ of habeas corpus at 11:22 a.m. on Sunday, January 18, 2026. *Pet.* The Court issued its emergency order barring Respondents from removing Mr. Garcia from the District of Maine at 1:59 p.m. the same day. Respondents have represented that Mr. Garcia departed the state of Maine "on a U.S. Immigration and Customs Enforcement ("ICE") flight, roughly two hours before the Court's issuance of the Emergency Order." *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* at 1 (ECF No. 9).

It is of course possible that Respondents removed Mr. Garcia from the District of Maine between 11:22 a.m. and 1:59 p.m. on January 18, 2026, and ordinarily the Court would accept the Respondents' factual representation at face value. However, given Respondents' disobedience of a court order and misrepresentation of critical facts to the Court regarding another immigration case, *Da Silva-O'Leary v. Hyde*, No. 2:26-cv-00036-JAW, *Resp. to Mot.* (ECF No. 9), the Court ORDERS Respondents to submit an affidavit or sworn declaration confirming the exact time of Mr. Garcia's departure from the District of Maine on January 18, 2026 within seven days of the date of this order.

On January 21, 2026, the Court ordered Respondents to show cause why Mr. Mr. Garcia's petition should not be granted, including whether the Court can and should order Mr. Garcia's return to the District of Maine, *O.S.C.* (ECF No. 7), and issued a TRO blocking Respondents from removing Mr. Garcia from the United States and ordering Respondents to provide Mr. Garcia with reasonable access to counsel during his period of detention. *Order on Mot. for TRO* (ECF No. 8) (*TRO*). That same day, Respondents filed their response to the show cause order, opposing Mr. Garcia's petition, *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 9) (*Resp'ts' Opp'n*), and Mr. Garcia filed his reply. *Pet'r's Reply to Resp'ts' Resp. to O.S.C.* (ECF No. 10) (*Pet'r's Reply*).

## II.    THE PARTIES' POSITIONS

Mr. Garcia alleges his detention violates the Immigration Nationality Act (INA) and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 41-51. Mr. Garcia maintains he is illegally categorized as a mandatory detainee pursuant to 8 U.S.C. § 1225(b)(2), rather than a discretionary detainee under § 1226(a) who is entitled to a bond hearing before an Immigration Judge. *Id.* ¶¶ 45-47. Pointing to recent Board of Immigration Appeals (BIA) precedent he interprets as likely foreclosing his request for a bond hearing, Mr. Garcia anticipates being denied a bond hearing in violation of his Fifth Amendment due process rights. *Id.* ¶¶ 39-40, 47. Mr. Garcia also maintains, "in the interest of justice," the Court should order Respondents return him to the District of Maine because his transfer to Louisiana violates "the strict letter and underlying spirit of

the [Court's] TRO." *Pet'r's Reply* at 2-3.  Mr. Garcia seeks, inter alia, a writ of habeas corpus ordering his immediate release, or in the alternative, an order requiring an Immigration Judge to provide him a bond hearing as soon as possible. *Pet.* 10-11.

In their opposition, Respondents maintain Mr. Garcia is properly categorized as a mandatory detainee under § 1225(b)(2), as dictated by controlling agency precedent. *Resp'ts' Opp'n* at 2.  However, Respondents acknowledge that "recent caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's interpretation of § 1225" and they concede Mr. Gracia's case is not substantially distinguishable from that line of cases. *Id.*  Respondents also maintain, "[a]s a matter of practicality," the Court should not order Mr. Garcia's return to the District of Maine. *Id.* at 2-3.  Given the accelerated briefing schedule, Respondents explain, a merits determination in Mr. Garcia's favor would divest Respondents of custody before they could arrange his return to the District of Maine. *Id.* at 2.  Additionally, Respondents maintain the Court's TRO resolved "the underlying concerns" in the court's emergency stay order, which was issued approximately two hours after Mr. Garcia departed for Louisiana, by ensuring Mr. Garcia reasonable access to counsel and preventing his removal from the United States, which "obviat[es] any need for [Mr. Garcia] to be physically present in Maine pending the resolution of his case." *Id.* at 3.

4

### III.    DISCUSSION

####    A.    Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Garcia's habeas petition.  "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'"  *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)).   Furthermore, under habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948).  Here, the Court retains jurisdiction over this matter, because Mr. Garcia filed his habeas petition when he was in custody in the District of Maine.

####    B.    The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Mr. Garcia, and he is therefore subject to discretionary detention under § 1226(a) and entitled to a bond hearing.  For the reasons explained below, the Court orders Respondents to return Mr. Garcia to the District of Maine.

### 1.    Statutory Framework

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[3] Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus, § 1225(b)(2) creates a mandatory detention scheme. *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for

---

[3]    Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expedited removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

noncitizens." *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085, at *4-5 (D. Mass. Jul. 7, 2025).  However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities.  8 U.S.C. § 1226(c)(1).  None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8) (2025).  If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge.  8 C.F.R. § 236.1(d)(1) (2025).  At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk."  *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA.  8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.*

at 288 (explaining that, "once inside the United States" a noncitizen *present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### 2.    Applicability of Section 1226(a)

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances.  *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a)); *Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 195270, at *7-8 (D. Me. Oct. 2, 2025) (collecting cases).

At bottom, the district courts consistently hold that § 1225(b)(2) applies only to those noncitizens who are actively "seeking admission," and a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission.  *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2025 U.S. Dist. LEXIS 184909, at *35 (D. Me. Sept. 21, 2025).  Rather, a noncitizen "already in the country pending the outcome of removal proceedings" is subject to discretionary detention under § 1226(a).  *Jennings*, 583 U.S. at 289.  As Mr.

Garcia explains in his petition, and Respondents do not contest, he has resided in the United States since September 2021. *Pet.* ¶ 1. Therefore, Mr. Garcia cannot be categorized under § 1225(b)(2) as actively seeking admission. Instead, as a noncitizen already in the country, he is properly categorized under § 1226(a)'s discretionary detention scheme. Accordingly, Mr. Garcia is entitled to a bond hearing before an Immigration Judge. *See Hernandez-Lara*, 10 F.4th at 41.

### 3.    Due Process

Because Mr. Garcia is currently in the United States, he is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 U.S. Dist. LEXIS 175513, at *25 (D. Mass. Sept. 9, 2025), which provides that he will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Mr. Garcia bears the burden of demonstrating by a preponderance of the evidence that his detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chogllo*

*Chafla*, 2025 U.S. Dist. LEXIS 184909, at \*29 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao,* 2025 U.S. Dist. LEXIS 175513, at \*26 (same); *Hernandez-Lara*, 10 F.4th at 27-28 (same).   Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.    Private Interest

In his petition, Mr. Garcia asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41.  In this case, Respondents

have refused Mr. Garcia the bond hearing he is guaranteed under § 1226(a) and have failed to meet their burden for his continued detention as due process requires. Mr. Garcia has therefore clearly established the first *Mathews* factor weighs in his favor.

### b.    Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Mr. Garcia presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in his favor.

### c.    Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do not raise any governmental interest favoring Mr. Garcia's continued detention without a bond hearing. *See Chogllo Chafla*, 2025 U.S. Dist. LEXIS 184909, at *34 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Mr. Garcia. Respondents' detention of

11

Mr. Garcia without a bond hearing pursuant to § 1226(a) therefore violates Mr. Garcia's due process rights.

### 4.  Selvin Isaias Situj Garcia's Return to the District of Maine

Lastly, the Court orders Respondents to return Mr. Garcia to the District of Maine.  The Court finds that Mr. Garcia's return to the District of Maine is necessary to ensure he has meaningful access to counsel consistent with the Court's January 21, 2026 TRO, particularly the Court's order that Respondents provide Mr. Garcia a bond hearing.  Mr. Garcia is represented by pro bono counsel located in Portland, Maine, *Pet'r's Reply* at 2, and he maintains a statutory right to select his own counsel.  *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose").  The First Circuit has described § 1362 as an "integral part" of due process.  *Zeru v. Gonzales*, 503 F.3d 59, 72 (1st Cir. 2007) (citation omitted).  Thus, under First Circuit law, Mr. Garcia has both a statutory and constitutional right to counsel now and at the upcoming bond hearing.

As the Court has determined that Mr. Garcia is entitled to a bond hearing and entitled to counsel at the bond hearing, the Court concludes that the burden imposed on Mr. Garcia and his local counsel to prepare for a bond hearing if he remains in Louisiana, more than 1,600 miles from Portland, "raises grave concerns as to his [due process] right to access to counsel."  *Cruz-Santana v. Gonzalez-Ramos*, No. 26-1028 (GMM), 2026 U.S. Dist. LEXIS 12121, at *13 (D.P.R. Jan. 22, 2026) (barring the

Government from transferring a detainee from Puerto Rico to a detention facility on the mainland because of the impact on the detainee's right to counsel).

Although the information about Mr. Garcia before the Court is limited, there is no suggestion in the filings that Mr. Garcia has a past criminal history in the United States or that criminal charges are pending against him. *Pet.* ¶¶ 26-31. According to his petition, Mr. Garcia has been living in Massachusetts since roughly September 2021 and he was working at a construction job in Bethel, Maine when Respondents detained him. *Id.* Under § 1226(a), Mr. Garcia is entitled to a bond hearing before a neutral decisionmaker. *See* 8 U.S.C. § 1226(a). As noted earlier, "[i]n order to continue detaining a noncitizen under section 1226(a), the government must either (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by a preponderance of the evidence that a noncitizen poses a flight risk." *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Hernandez-Lara*, 10 F.4th at 41. The Court acknowledges that the law entrusts an Immigration Judge with decision-making authority concerning whether to continue to detain Mr. Garcia or release him on bond; however, the Court observes that based on this limited record, Mr. Garcia's request for release raises a legitimate issue before the Immigration Judge.

Furthermore, under these unusual circumstances, allowing Respondents to continue detaining Mr. Garcia outside the District of Maine, rather than ordering his return, would incentivize Respondents in the future to transfer similarly situated

immigration detainees outside the District of Maine after the Court has retained jurisdiction over a detainee's habeas petition.

Accordingly, the Court orders Respondents to return Mr. Garcia to the District of Maine where he may remain detained pending his bond hearing.[4]

## IV.    CONCLUSION

Finding Respondents' continued detention of Mr. Garcia without a bond hearing violates federal law and the Fifth Amendment of the United States Constitution, the Court GRANTS, in part and defers in part, Selvin Isaias Situj Garcia's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) and ORDERS Respondents to return Mr. Garcia to the District of Maine within five days of the date of this order.  The Court otherwise DEFERS action on the merits of the pending Petition.  The Court ORDERS Respondents to file a status update within twenty-four hours of the date of Mr. Garcia's return to the District of Maine, confirming his return consistent with this order.

The Court further ORDERS Respondents to submit within seven days of the date of this order an affidavit or sworn declaration confirming the exact time of Mr. Garcia's departure from the District of Maine on January 18, 2026.

---

[4]     The Court will schedule a conference of counsel to discuss logistics and timing.  In *DuPont v. Meserve*, 2:25-cv-00593-JAW, the government proposed such a roundabout and delayed return from Louisiana to Maine that the Court ordered the noncitizen released, and he obtained documentation that allowed him to take a commercial flight back to Maine.

In this case, one alternative would be for Respondents to agree that Mr. Garcia could be released on personal recognizance bond.  If so, Mr. Garcia could be released to Massachusetts and could obtain his bond hearing there.  At this point, the Court is reluctant to release Mr. Garcia prior to his bond hearing without Respondents' acquiescence.

The Court will discuss these issues with counsel at the to-be-scheduled conference.

14

Upon Mr. Garcia's return to the District of Maine, the Court further enjoins Respondents from denying Mr. Garcia a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to him and ORDERS Respondents shall provide Mr. Garcia a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of his return to the District of Maine.  Lastly, the Court ORDERS Respondents to file a status report within five days of Mr. Garcia's bond hearing, stating whether Mr. Garcia has been granted bond, and, if his request was denied, the reasons for that denial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026

15